IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. RIDGE, | No. C 09-2931 WHA (PR) |
|     Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
|   v. | |
| JAMES WALKER, Warden, | |
|     Respondent. | |

## INTRODUCTION

Petitioner, a California prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. 2254, seeking relief from his conviction in state court. Respondent filed an answer and a supporting memorandum, and petitioner filed a traverse. Thereafter, the case was stayed because petitioner wanted to exhaust other claims in state court. He did so, and he was granted leave to file an amended complaint to include his newly-exhausted claims. He was informed that his amended complaint would supercede his original complaint and therefore to include in the amended complaint all of the claims he wanted to pursue. He filed an amended complaint with fourteen claims, including new claims and omitting some claims from his original petition. Responded filed an answer and supporting memorandum to the amended petition. Although given the opportunity to do so, petitioner did not file a traverse. For the reasons set forth below, his amended petition is **DENIED**.

## STATEMENT

On April 8, 2004, petitioner's brother Donald Jones drove petitioner's van to a street

corner in Oakland and fired an assault rifle at four boys standing there. One of the boys, Thomas Simpson, was killed, and another wounded. Petitioner was in the van, along with Ray Gilbert and Ronnie Wilhite. Gilbert and petitioner were shot by return fire. After the shooting, Jones drove the van to a nearby hospital, dropped off petitioner, Gilbert and Wilhite, and drove away. Petitioner and Gilbert were treated for gunshot wounds, and Gilbert died. The police soon found petitioner's van with a bullet hole and a bloodied passenger seat. Wilhite testified to the foregoing at trial.

The issues at trial was the identity of the driver of the van and whether the van's passengers, including petitioner, were complicit in the shooting. Other witnesses in addition to Wilhite identified Jones as driving the van shortly before the shooting, as well as to the hospital afterwards. Cellular telephone activity also placed Jones at the scene of the shooting and later at the hospital. Jones denied being involved and challenged his identification by witnesses at trial.

Petitioner eventually admitted to the police that his van was used and that he was present at the shooting. His presence at the shooting was confirmed by forensic evidence, including evidence that the bullet that struck and killed Gilbert also struck petitioner and wounded him. Petitioner did not testify at trial, but a statement he made to the police on the day after the shooting was played for the jury. His attorney argued that petitioner did not know that Jones planned to shoot anybody, and that he did nothing to help Jones. His attorney also explained that he initially denied being at the shooting because he was scared.

On March 5, 2005, petitioner was convicted in Alameda County Superior Court of two counts of second-degree murder and attempted murder of three others. Jones was also convicted of two counts of murder and three counts of attempted murder. Petitioner was sentenced to two consecutive terms of twenty years to life in state prison for the murders, and to an additional term of eleven years and eight months in state prison for the attempted murders and a gun enhancement. The California Court of Appeal affirmed the judgments against

2

petitioner and Jones in a joint opinion (Ex. 6[1]).  The California Supreme Court denied a petition for review (Ex. 8).

In 2008, petitioner filed a habeas petition in federal court, No. C 08-3910 VRW (PR), setting forth eleven claims for relief.  The petition was dismissed without prejudice because eight of the claims had not been exhausted.  Petitioner filed two habeas petitions in the California Supreme Court that were denied in 2008 and 2009, respectively.  He then filed the instant petition on June 30, 2009, with eleven claims.  Respondent filed an answer and petitioner filed a traverse, and then petitioner requested a stay in order to exhaust additional claims.  The stay was granted on January 18, 2012, and petitioner filed a new habeas petition in the California Supreme Court that same day.  The California Supreme Court denied that petition on April 25, 2012, and thereafter petitioner's request to lift the stay on his federal petition was granted.  He filed an amended petition on June 27, 2012, setting forth 14 claims.  The amended petition is addressed below.

**ANALYSIS**

**I.    STANDARD OF REVIEW**

A writ of habeas corpus may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d).  The first prong applies to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000), whereas the second prong applies to decisions based on factual determinations.  *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003).  In any case, a federal court may not issue a writ simply because it concludes in its independent judgment that the relevant state-court decision incorrectly applied clearly established federal law or wrongly determined the facts of the case.  Rather, the state-court's adjudication must be also unreasonable.  *Williams,* 529 U.S. at 411.

---

[1] Unless otherwise noted, the exhibits cited in this order are those lodged by respondent.

3

**II.   ISSUES PRESENTED**

In the amended petition, petitioner claims that his counsel was ineffective in several respects, he was incompetent to stand trial, his speedy trial rights were violated, the trial court committed error at sentencing, the jury instructions were erroneous, the prosecutor committed misconduct in several instances, and the trial judge committed misconduct.

   A.   PROCEDURAL DEFAULT

Petitioner's first claim is that trial counsel failed to investigate and discuss with him his mental health problems, potential mental health defenses, and competency to stand trial, and failed to move the trial court for a competency determination and an insanity defense. His second claim is that his due process rights were violated because he was incompetent to stand trial, and the trial court failed to conduct a "competency and sanity" hearing sua sponte. Respondent argues that these claims are procedurally defaulted from federal habeas review because the California Supreme Court denied them as untimely.

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). California's timeliness rule is both independent and adequate, *Walker v. Martin*, 131 S. Ct. 1120, 1131 (2011); *Bennett v. Mueller*, 322 F.3d 573, 582-83 (9th Cir. 2003), such that when a California court denies a claim as untimely, the claim is procedurally defaulted from federal habeas review.      Petitioner raised his first and second claims in his third state habeas petition to the California Supreme Court in 2012 (Resp. Ex. 13). The California Supreme Court denied the petition summarily with citations to *In re Robbins*, 18 Cal. 4th 770, 780 (1998), *In re Clark*, 5 Cal. 4th 750, 767-69 (1993), *People v. Duvall*, 9 Cal. 4th 464, 474 (1995), and *Ex parte Swain*, 34 Cal. 2d 300, 304 (1949) (Resp. Ex. 24). When, as here, the California Supreme Court denies a habeas petition without comment but with citation to *Robbins* at 18 Cal. 4th 770, 780, the page where the California Supreme Court discusses the state law's analytical framework for timeliness determinations, the denial is a denial on untimeliness grounds. *See Thorson v. Palmer,* 479 F.3d 643, 645 (9th Cir. 2007). The California Supreme Court's citation to

4

additional cases in addition to *Robbins* does not alter this conclusion, but rather indicates that there were other procedural defects in addition to untimeliness. *See*, *e.g.*, *In re Clark*, 5 Cal. 4th 750, 767-68 (1993) (discussing state's rule against newly presented claims that were known, or should have been known, at the time of a previous petition). Citations to *Swain* and *Duvall* on their own would not necessarily indicate that the denial was for untimeliness, *Cross v. Sisto*, 676 F.3d 1172, 1178 (9th Cir. 2012), but the inclusion of a citation to the discussion of untimeliness *Robbins* indicates that, whatever else was wrong with the petition, the California Supreme Court considered it untimely, *compare id.* (finding California Supreme Court's citations to *Swain* and *Duvall* on their own does not necessarily mean the denial is based on untimeliness, where there was no citation to *Robbins*). The denial of the petition on timeliness grounds means, under *Walker* and *Bennett*, petitioner's first and second claims are procedurally defaulted from federal habeas review.

Although there are exceptions to procedural default where petitioner can show cause and prejudice for the default or a fundamental miscarriage of justice, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991), petitioner does not attempt to make these showings here, nor are they apparent from the record. Accordingly, the first and second claims are denied as procedurally defaulted. In light of this conclusion, respondent's alternative arguments for denying these claims as untimely and without merit need not be reached.

B.   RIGHT TO A SPEEDY TRIAL

Petitioner's third claim is that he was denied his constitutional right to a speedy trial. A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment to the Constitution and imposed by the Due Process Clause of the Fourteenth Amendment on the states. *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967). Courts consider and weigh the following factors in evaluating a Sixth Amendment speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Doggett v. United States*, 505 U.S. 647, 651 (1992). None of the four factors are either a necessary or sufficient condition for finding a speedy trial deprivation, *Barker v. Wingo*, 407 U.S. 514, 533 (1972).

1     Here, the delay was not long enough to presume prejudice. Unless the delay is long
2 enough to be considered "presumptively prejudicial," there is no necessity for inquiry into the
3 other factors. *Doggett*, 505 U.S. at 651-52. The lower courts have generally found post-
4 accusation delay presumptively prejudicial at least as it approaches one year. *Id.* at 652 n.1.
5 However, the peculiar circumstances of each case must be considered, and a delay that can be
6 tolerated for an ordinary street crime is considerably less than for a serious and complex
7 charges. *United States v. Lam*, 251 F.3d 852, 856-57 (9th Cir.), *amended*, 262 F.3d 1033
8 (2001). Here, the delay between the arrest (April 2004) and trial (February 2005) was less than
9 a year, and the charges of multiple murders against multiple defendants were both sufficiently
10 serious and complex to tolerate a lengthier delay (Resp. Ex. 1 at 1, 283). Accordingly,
11 prejudice is not presumed, which obviates the need to consider other factors. Nevertheless,
12 even if the other factors had to be considered, they would not suggest a violation. Petitioner
13 suggested what prejudice he actually suffered in this case from the delay. The reason for the
14 delay was attributable to defense counsel insofar as petitioner's counsel was engaged in a
15 different murder case when the case was set to go to trial in November 2004 (Resp. Ex. 11
16 (Reporter's Transcript 11/22/04 attached at 2-3). Defense counsel indicated that he was
17 amenable to the continuance, and the record shows no objections to the further continuances
18 until February 2005 (Resp. Ex. 1 at 234-35, 240-44). As the delay was not long enough to
19 presume prejudice and the other factors weigh against finding a violation of the Sixth
20 Amendment, petitioner's claim must be denied. Respondent's alternative argument that the
21 claim is not exhausted need not be reached, *see* 28 U.S.C. 2254(b)(2) (allowing court to deny
22 unexhausted claim on its merits).

23     C.     JURY INSTRUCTIONS

24     Petitioner claims that the trial court should not have given instructions on second-degree
25 murder and non-premeditated attempted murder. He argues that the evidence required the jury
26 to find him guilty of either first-degree murder and premeditated attempted murder as Jones's
27 accomplice, or no murder or attempted murder at all as an unwitting passenger.
28     Whether a jury instruction causes a violation of due process will depend upon the

6

evidence in the case and the overall instructions given to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995). Due process allows trial courts to give jury instructions that are reasonably supported by the evidence. *See United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotations omitted) (instructions allowed on defense theory if there is evidence upon which the jury could rationally find for the defendant); *see also United States v. Houston*, 648 F.3d 806, 816 (9th Cir. 2011) (defendant entitled to instruction under *Boulware* "even if the evidence is weak, insufficient, inconsistent, or of doubtful credibility").

The California Court of Appeal correctly explained why the evidence reasonably supported a jury instruction on second-degree murder (Resp. Ex. 6 at 23-24). For Jones — and petitioner as his accomplice — to be guilty of second-degree murder, Jones would have to have intended to inflict great bodily injury when he shot at the people on the street; if he intended to kill, then he would be guilty of first-degree murder (*ibid.*). When Jones drove up and shot the victims after stopping and getting a gun, he could have intended to kill them or simply to hurt them badly; a rational jury could conclude either. As a result, the evidence supported a verdict by a rational jury of second-degree murder. Indeed, the trial court had an *obligation*, at least under California law, to instruct the jury on a lesser-included offense where, as here, the evidence raises any question as to whether all of the elements of the greater offense (i.e. first-degree murder) are met (*id.* 24 (citing *People v. Barton,*, 12 Cal. 4th 186, 190 (1995)). Similarly, the trial court appropriately gave instructions on non-premeditated attempted murder because the evidence could reasonably support a conclusion that Jones did not premeditate killing or trying to kill the victims. Accordingly, petitioner is not entitled to relief based on this claim of instructional error. Respondent's argument that this claim is procedurally barred need not be addressed.

### D. SENTENCING ERROR

In his fifth claim, petitioner argues that the trial court violated his Sixth Amendment right to a jury by sentencing him to consecutive sentences without referring the associated factual determinations to the jury. The United States Supreme Court has held that a judge may determine facts allowing imposition of sentences consecutively because the Sixth Amendment

does not require those facts to be decided by a jury. *Oregon v. Ice*, 555 U.S. 160, 168-69 (2009) (declining to extend *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), to a state law allowing judges to determine facts allowing imposition of sentences consecutively). Consequently, petitioner cannot obtain habeas relief on this claim.

### E.  PROSECUTORIAL MISCONDUCT

In his sixth, eighth, eleventh and thirteenth claims, petitioner claims that the prosecutor presented perjured testimony by Ronnie Wilhite, and misrepresented the facts by arguing to the jury that it should believe Wilhite's testimony. Wilhite was one of the men in petitioner's van with petitioner and Jones. Wilhite initially gave an account of the incident to the police that he later contradicted in his trial testimony. He explained that he had lied to the police because he feared that if he told the truth he would be killed for being a "snitch" (Resp. Ex. 2 at 379-82).

In his sixth claim, petitioner claims that the prosecutor presented Wilhite's false testimony that there was a revolver already in the van when they all got into it. In his eighth claim, he claims that the prosecutor presented Wilhite's false testimony that Jones started the shooting, before the people on the street fired shots. In his eleventh and thirteenth claims, he does not cite particular aspects of Wilhite's testimony, but rather just makes the more general claim that the prosecutor misrepresented the facts and presented Wilhite's false testimony to the jury.

A prosecutor's use of testimony that he knows or should know is perjured violates a defendant's right to due process, and any resulting conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103 (1976).

There is no evidence that Wilhite's trial testimony, as opposed to his earlier contrary statement to the police, was false, much less that the prosecutor or should have known that it was false. The fact that Wilhite had made a prior inconsistent statement does not, on its own, establish that the trial testimony was false. Wilhite gave a plausible explanation as to why he had lied to the police, and the prosecutor did not commit misconduct by arguing that the jury should believe that explanation and Wilhite's trial testimony. Moreover, the inconsistencies

8

between Wilhite's trial testimony and his prior statement to the police were presented to the jury both on direct and cross-examination ((Resp. Ex. 2 at 340-43, 364-74). Defense counsel was able to argue that Wilhite lied at trial, that Wilhite's prior inconsistent statement was the true account, and even that Wilhite was lying at trial to curry favorable treatment from the prosecutor. This is all that is required for a fair trial because the jury was then free to decide which of Wilhite's two inconsistent accounts to believe, if any. Petitioner has not shown that the prosecutor committed misconduct or violated his right to due process by presenting Wilhite's trial testimony and arguing that the jury should believe it. Accordingly, claims six, eight, eleven and thirteen are denied.

F. INEFFECTIVE ASSISTANCE OF COUNSEL

In his seventh claim, petitioner argues that trial counsel failed to investigate Wilhite's prior inconsistent statements to the police and impeach him based on such statements. In order to succeed on an ineffective assistance of counsel claim, the petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires him to show deficient performance and prejudice. Deficient performance requires a showing that trial counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *See Wiggins v. Smith*, 539 U.S. 510, 521 (2003). To establish prejudice, petitioner must show a "reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. at 694-95.

The record shows that both the prosecutor and Jones's counsel questioned Wilhite in detail about the inconsistencies between his trial testimony and his prior statement to the police (Resp. Ex. 2 at 340-43, 364-74). Co-defendant's thorough cross-examination on this subject in particular obviated the need for petitioner's counsel to do the same. Petitioner does not identify any additional information or incremental benefit that would have been gained from his counsel also cross-examining Wilhite on the same topic. To the extent petitioner means to argue that counsel should have asked Wilhite about telling the police that there was no gun in the van

9

1  when they got into it, petitioner has not shown that Wilhite ever in fact told that to the police,
2  nor does this fact appear in the record. But even assuming Wilhite did tell this to the police
3  initially, cross-examination on this point was not likely to make any difference in the case.
4  Wilhite's initial statement to the police had already been demonstrated to be entirely
5  inconsistent with his trial testimony, and Wilhite had disavowed and explained the reasons for
6  lying to the police. One more inconsistent aspect of his prior statement would not likely to have
7  made any difference in the jury's evaluation of his credibility, let alone in the outcome of the
8  trial. For these reasons, petitioner has not shown either that it was unreasonable or prejudicial
9  for his attorney not to independently cross-examine Wilhite about his prior inconsistent
10  statements. This claim of ineffective assistance of counsel therefore must be denied.

11  In his tenth claim, petitioner asserts that counsel was ineffective in failing to present a
12  defense of self-defense. Trial counsel was reasonable in not doing so because there was hardly
13  any evidence to support that defense. The only evidence was in Wilhite's prior inconsistent
14  statement to the police that people on the street shot at the van before Jones returned fire. As
15  discussed above, Wilhite disavowed this account at trial. There was no other evidence that the
16  van was shot at first, or otherwise that Jones acted in self-defense. Counsel could reasonably
17  choose not to pursue a defense theory that was based solely on the disavowed prior inconsistent
18  statement of a prosecutor witness and that had no other corroborating evidence. *See Harrington*
19  *v. Richter*, 131 S. Ct. 770, 790-91 (2011) (trial counsel is not ineffective when he makes
20  \reasonable tactical decision). Accordingly, this claim of ineffective assistance of counsel fails.

21  Petitioner's twelfth claim is related to his tenth claim. He argues that the trial court
22  violated his right to due process when it "denied his self-defense claim." The record does not
23  show that the trial court prevented the defense from arguing self-defense, nor is there any
24  indication of any attempt by either defendant to present such a defense. In any event, as
25  discussed, there was no reliable evidence that petitioner or Jones acted in self-defense, and
26  therefore any such defense would have had virtually no chance of success. This claim also
27  fails.

28  In his fourteenth claim, petitioner argues that trial counsel was ineffective in failing to

10

1  meet with him further, conduct investigations and prepare for trial.  Petitioner's generalized
2  complaint about not meeting more with counsel does not suffice because a defendant can make
3  out a claim of ineffective assistance of counsel only by pointing to specific errors made by trial
4  counsel.  *See United States v. Cronic*, 466 U.S. 648, 666 (1984).  Petitioner does not explain
5  what would have been gained from further meetings or what specific errors happened because
6  they did not meet more.  The investigations and preparation petitioner argues counsel should
7  have made relate to impeaching Wilhite based on his prior inconsistent statements to the police.
8  As noted above, petitioner's counsel did not cross-examine Wilhite on this topic, but both
9  Jones's counsel and the prosecutor each questioned Wilhite in detail about his prior inconsistent
10  statements, his purported reasons for lying to the police, and his possible attempt to curry favor
11  with the prosecution with his trial testimony.  As has been explained above, petitioner has not
12  shown that further cross-examine or impeachment of Wilhite based on his prior inconsistent
13  statements was unreasonable or prejudicial.  This claim of ineffective assistance of counsel is
14  denied.

G. JUDICIAL MISCONDUCT

16  In his ninth claim, petitioner claims that the trial court committed misconduct by
17  questioning one of the witnesses.  It is generally appropriate for a trial judge to participate in the
18  examination of witnesses for the purpose of clarifying the evidence, confining counsel to
19  evidentiary rulings, controlling the orderly presentation of the evidence, and preventing undue
20  repetition of testimony.  *United States v. Morgan*, 376 F.3d 1002, 1008 (9th Cir. 2004).  A trial
21  judge's participation oversteps the bounds of propriety and deprives the parties of a fair trial
22  only when the record discloses actual bias or leaves the reviewing court with an abiding
23  impression that the judge's remarks and questioning projected to the jury an appearance of
24  advocacy or partiality.  *United States v. Parker*, 241 F.3d 1114, 1119 (9th Cir. 2001).  During
25  the direct examination of Wilhite, the trial court briefly interjected and asked Wilhite several
26  questions about his position in the van during the shooting (Resp. Ex. 2 at 328-29).  The judge
27  asked him whether he was lying down, if he could see who was firing the shots, if he could see
28  the weapon, how Jones got the weapon from between the seats, if the van was stopped at that

11

point, and where it was stopped (*ibid.*). The prosecutor had just attempted to ask Wilhite about these things but had difficulty eliciting clear information (*id.* 325-28). The judge's questions were phrased in a neutral manner and were designed to elicit simple facts clarifying what Wilhite did and did not see. Nothing about the judge's questions projected to the jury an appearance of advocacy or partiality, and there is nothing in the record that discloses actual bias. Accordingly, the trial judge did not deprive petitioner of a fair trial, and his claim of judicial misconduct fails.

## CONCLUSION

For the reasons described above, the petition for a writ of habeas corpus is **DENIED**. A certificate of appealability will not issue. *See* 28 U.S.C. 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

Dated: March  10 , 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE